JACOB MYSLEWITZ, PROSECUTOR, v. LEO S. SULLIVAN, JUDGE OF THE FIRST CRIMINAL COURT OF JERSEY CITY, AND CHARLES M. EGAN, JUDGE OF THE COMMON PLEAS COURT OF HUDSON COUNTY, RESPONDENTS.

Submitted February 7, 1925—Decided November 18, 1925.

1. Section 3 of the act of 1915, concerning the welfare of children, as amended by *Pamph. L.* 1918, *p.* 217, vests jurisdiction to hear complaints for violations of the act in any justice of the peace, or any police magistrate of any municipality, or a judge of any Court of Quarter Sessions of the county, and such jurisdiction is not vested in a judge of the Court of Common Pleas, although a judge of that court is also a judge of the Court of Quarter Sessions.
2. Neither the original act of 1915, concerning the welfare of children, nor the amendatory act of 1918 (*Pamph. L., p.* 217), gave any appeal from a conviction of a violation of the act to the Court of Common Pleas, the remedy being a writ of *certiorari* to the Supreme Court to review the conviction.
3. Section 1 of the act of 1915, concerning the welfare of children, defines that abuse of a child shall consist (among other acts) of "employing or permitting a child to be employed in any occupation, employment or vocation, or employment injurious to its health or dangerous to its life or limb, or contrary to the laws of this state," and it is essential to the validity of a complaint under the statute, to charge that the accused stand in the relation of a parent or guardian to the child alleged to have been abused, or that he had the care, custody or control of such child, and also to set out the particular act or acts denounced by the statute, and it is not sufficient to charge the offense in the alternative of "employing or permitting a child," &c.

On *certiorari.*

Before Justices KALISCH, BLACK and CAMPBELL.

For the prosecutor, *Gross & Gross.*

For the respondents, *Thomas J. Brogan.*

The opinion of the court was delivered by

KALISCH, J. The prosecutor was convicted on the 6th day of July, 1923, in the First Criminal Court of Jersey City,

upon a complaint charging "that on the 1st day of May, A. D. 1923, at Jersey City aforesaid, and continuing to the date of this complaint," the prosecutor "did violate section 2 of an act entitled 'An act concerning the welfare of children,' approved April 8th, 1915, as supplemented and amended, in that the said Jacob Myslewitz [prosecutor] did feloniously abuse Stella Zachai, a minor child under the age of sixteen years, by employing or permitting said child or children to be employed in a vocation or employment injurious to its health or dangerous to its life or limb, and contrary to the laws of this state."

It is well to mention here that the only other statute, which relates to the welfare of children, as provided for by the statute of 1915, is the statute of 1918 (*Pamph. L.* 1918, *p.* 217) entitled "An act to amend an act entitled 'An act concerning the welfare of children,' approved April 8th, 1915."

Upon the conviction had, the prosecutor was committed by the police magistrate to the Hudson county jail for the term of sixty days, and further to pay a fine of $100. From the conviction and judgment given thereon the prosecutor appealed to the Court of Common Pleas of Hudson county, which tribunal affirmed the same. A writ of *certiorari* was then sued out of the Supreme Court, allowed by Mr. Justice Minturn, which writ was directed to Leo S. Sullivan, judge of the First Criminal Court of Jersey City, and Charles M. Egan, judge of Common Pleas Court of Hudson county. The matter was brought on for hearing before the said justice, sitting for the Supreme Court, as provided for by statute. From the record before us it is gleaned that the judgment of the Common Pleas Court affirming the judgment of the court of first instance was affirmed, and that, subsequently, upon a rehearing had before the said justice, he vacated the judgment and ordered "that the above-entitled matter be argued before the Supreme Court at the January, 1925, term thereof." This was done. It is further to be observed that a joint return was made to the writ on the 16th day of February, 1924, by Leo S. Sullivan, judge of

the First Criminal Court of Jersey City, and Charles M. Egan, judge of the Court of Common Pleas of Hudson county. Later, on the 22d day of July, 1924, a separate return was made to the writ by Judge Egan, whereby he certifies and sends to the Supreme Court "all of the evidence and testimony touching and concerning the trial of the above-named Jacob Myslewitz, prosecutor, and upon which the conviction of the said Jacob Myslewitz heretofore returned with the writ herein was based, as certified to me by Leo S. Sullivan, judge of the First Criminal Court of Jersey City." It is therefore made plain to us, by the state of the case, that the judge of the Court of Common Pleas undertook to act as an appellate tribunal, by affirming the conviction and judgment had in the police court upon the complaint, testimony and proceedings had in that court, without any statutory authorization of an appeal to the Court of Common Pleas from the court of first instance, in this class of cases.

It is quite evident that there has been a misconception of the proper procedure under the act of 1915. Neither it, nor the amendatory act of 1918, provides for an appeal to the Court of Common Pleas. The proper course to pursue was to sue out of the Supreme Court a writ of *certiorari* directed to the police court, where the case was tried and judgment given.

*Spring Lake* v. *Shibla,* 101 *N. J. L.* 441, where the cases, dealing with the subject of procedure, pertinent to the one in hand, are collated.

Section 3 of the act of 1915, as amended in 1918, page 218, under which the proceedings in the present case were instituted, provides: "Complaints for the violation of the provisions of this act may be made to any justice of the peace or to any police magistrate of any municipality, or to a judge of the Court of Quarter Sessions in any county, etc., * * * such magistrates and judges are hereby invested with jurisdiction to hear and determine such complaints in a summary manner and to impose the penalties provided in the last preceding section of this act."

The significance of this section consists in that it neither confers jurisdiction on the Court of Common Pleas, nor on

the Court of General Quarter Sessions, to hear or determine a case arising under the statute in question; nor does it invest either court with appellate jurisdiction in such a case, but, on the contrary, it expressly invests and limits the jurisdiction of violations of the statute in and to the classes of individuals designated in the section of the act above quoted, namely to justices of the peace, police magistrates of any municipality or judge of the Court of Quarter Sessions of any county, the effect of which is that the judge of the Quarter Session is created a special statutory tribunal, having concurrent jurisdiction with justices of the peace and police magistrates. We, therefore, meet with no difficulty in holding that the Court of Common Pleas was wholly without jurisdiction to entertain the cause, even though it appears, as it does here, that the prosecutor took the appeal and no objection was made to the legal propriety thereof, and that the cause was heard and determined by that court with the apparent acquiescence of the parties to the proceedings.

It needs no citation of authorities to support the familiar elementary proposition that the consent of parties cannot confer jurisdiction of a subject-matter of controversy between them upon a court where no jurisdiction thereof originally inheres, or where the jurisdiction exercised has not been conferred upon it by statute.

Moreover, the entire proceedings upon appeal were conducted by the judge of the Court of Common Pleas as judge of that court, whereas the statute expressly provides that the jurisdiction conferred by it shall be exercised by a judge of the Court of Quarter Sessions. Although a judge of the Court of Common Pleas is also a judge of the Court of Quarter Sessions, the former court being one of purely civil jurisdiction and the latter of criminal and *quasi*-criminal, nevertheless, the very fact that the judge is invested with authority to hold these courts so diverse in their jurisdiction, makes it obvious that there is a necessity in the proper performance of his duties in each of these courts in which he is called upon to act, and especially as a statutory tribunal, in conducting proceedings, signing orders and giving judg-

ment, to conduct the same in the capacity designated by the legislature, which, in the present case, could only be legally done as judge of the Court of Quarter Sessions.

We have not undertaken to point out other valid grounds which present themselves why the course of procedure, as was adopted by the judge of the Court of Common Pleas, cannot be lawfully upheld, deeming the reasons already given to be sufficient for that purpose. The judgment of the judge of the Court of Common Pleas must be reversed for lack of jurisdiction. This result, however, leaves open for decision the validity of the conviction and judgment of the First Criminal Court of Jersey City, the record of which court is brought before us for review by the writ of *certiorari* issued in the cause. The prosecutor presents numerous reasons why the conviction and judgment should be set aside. The complaint against the prosecutor is attempted to be predicated on a violation of section 2 of the statute of 1915, as supplemented and amended. It has already been indicated above that the only amendment of the statute is to be found in the laws of 1918, *supra.* Section 2 provides: "Any parent, guardian or person having the care, custody or control of any child or children, who shall abuse, abandon, be cruel to or neglectful of any child or children, shall be deemed to be guilty of "cruelty and neglect of children," and, upon conviction thereof, be fined not to exceed $100, or to imprisonment not exceeding one year in the workhouse or penitentiary," &c. Section 1 of the act of 1915, page 441, *inter alia,* provides: "Abuse of a child shall consist in any of the following acts. * * * (b) Employing or permitting a child to be employed in any vocation or employment injurious to its health or dangerous to its life or limbs, or contrary to the laws of this state." * * * It is a violation of this inhibition which is made the gravamen of the complaint. The complaint charges: "The said Jacob Myslewitz did feloniously abuse Stella Zachai, a minor child under the age of sixteen years, and other minor children under the age of sixteen years, by employing, or permitting said child or children to be employed, in a vocation

or employment injurious to its health or dangerous to its life or limb, and contrary to the laws of this state." It is to be observed that the violation of the statutory inhibition is charged in the complaint in the exact language of the statute, with the exception of the general charge of felonious abuse of a minor child or children under the age of sixteen years. It is quite apparent that the purport of the statute was wholly misconceived. The act was directed against the cruelty or abuse of a child or children, by a parent, guardian or person having care, custody or control of any such child or children. It was, therefore, essential to the validity of the complaint, in order to charge a violation of that particular inhibition of the statute that the accused stood in the relation of parent or guardian to the child or children abused or cruelly treated, or that he had the care, custody or control of such child or children. This the complaint fails to do, and, therefore, the omission renders it fatally defective.

There is no warrant to be derived from the statute for the use of the term "felonious abuse" in the complaint, since the statute simply uses the word "abuse." But this is of no importance here. The two glaring defects in the complaint are, firstly, that it fails to set out the particular act or acts done by the prosecutor constituting cruelty toward children, as denounced by the statute; secondly, in that it charges the offense in the alternative. The language employed in the complaint charging the offense is, "by employing, or permitting said child or children to be employed, in a vocation or employment injurious to its health or dangerous to its life or limb and contrary to the laws of this state." The statutory language is, "(b) employing or permitting a child to be employed in a vocation or employment injurious to its health or dangerous to its life or limb or contrary to the laws of this state."

It is to be observed subdivision ·b, of section 1 of the statute, simply ·undertakes to define in general terms what shall constitute cruelty to children in the existence of certain relationships designated by section 2, namely, those of parent, guardian or person having the care, custody or con-

trol of any child or children. It is a statutory definition of what shall constitute cruelty in the relationship and circumstances described by the statute. It is descriptive in general terms of what the cruelty shall consist. To bring an alleged offender within the operation of the statute, in prosecutions under it, as has already been pointed out. it was essential to a valid complaint that it should show upon its face that one of the relationships designated by the statute existed between the accused and the child or children, and the nature of the employment. The requirement of the statute is not met by merely charging that the employment was one injurious to health, or dangerous to life or limb, and contrary to the laws of this state, without stating in what respect and by disclosing the character of the employment. These essential requisites the complaint does not contain and their omissions render it invalid.

The other glaring defect which is fatal to the validity of the complaint consists in that it charges the commission of the offense in the alternative. The accused is entitled to know with what specific act constituting cruelty he is charged, and he cannot properly and in justice be left to speculate or conjecture as to whether or not he is charged with cruelty in employing a child or children in an employment injurious to health or in an employment dangerous to life or limb, or contrary to the laws of this state. These charges are distinct in character and naturally would require a different kind of evidence in support of them as well as to combat them. The familiar legal rule that a complaint must be certain and not equivocal in charging an accused with a penal offense seems to have been entirely ignored in this respect.

No useful purpose can be served in pursuing the consideration and discussion of the case by a review, *in extenso,* of the testimony, and the record of conviction in order to demonstrate the invalidity of the entire proceeding had in the police court. It is sufficient to say that the testimony fails to support the complaint in that the prosecutor was guilty of any violation of section 2 of the act as amended, and that the

record of conviction, which concludes as follows: "I do, on this 6th day of July, A. D. 1923, hereby adjudge the said Jacob Myslewitz guilty of having violated section 2 of an act entitled 'An act concerning the welfare of children,' approved April 8th, 1915, and the various supplements thereto and thereof, within the intent and meaning of the said act, and he is hereby convicted of violating said act," is tainted with all the vices pointed out as existing in the complaint and testimony. The judgment of the Court of Common Pleas, affirming the judgment of the First Criminal Court of Jersey City, is reversed, and the conviction and judgment of the First Criminal Court of Jersey City are set aside.